UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN JOSEPH GOOD

       Plaintiff,                 Civil Action No. 15-12064
                                 Honorable Avern Cohn
             v.            Magistrate Judge Elizabeth A. Stafford

DENNIS HEYNS, *et al.*,

       Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [ECF No. 72], AND DENY
PLAINTIFF'S MOTION FOR AN ORDER TO SHOW CAUSE [ECF No. 70]
<u>AND MOTION TO STRIKE DEFENDANTS' MOTION [ECF No. 75]</u>**

## I.    INTRODUCTION

Plaintiff Jonathan Joseph Good filed this action in June 2015 against

21 defendants [ECF No. 1]; it was pared down to five claims against six

defendants when the Court granted in part a motion to sever.  [ECF No. 46

and 50].  Defendants move for summary judgment on the remaining

claims.[1]  For the reasons set forth below, the Court **RECOMMENDS** that

the defendants' motion for summary judgment [ECF No. 72] be **GRANTED**,

and that Good's motions for an order to show cause [ECF No. 70] and to

_____

[1] The Honorable Avern Cohn referred all pretrial matters to the undersigned
pursuant to 28 U.S.C. § 636(b).  [ECF No. 6].

strike defendants' motion [ECF No. 75] be **DENIED**.

## II.    BACKGROUND

This case arises out of a Class II ticket for insolence that Corrections Officer (C/O) Michael Cerny wrote against Good.  [ECF No. 1, PageID 80]. After a July 5, 2013 hearing, Good was found guilty and sanctioned with two days of lost privileges.  [*Id.*].[2]

Good avers in Claim I of his complaint that Michigan Department of Corrections (MDOC) policy directive (PD) 03.03.105, "as implemented by Defendant [former Director of MDOC Dennis] Heyns," facilitates a Class II disciplinary process of biased and sham proceedings.  [ECF No. 1, PgID 6-7].  In Claim II, he alleges that C/O Cerny authored a false misconduct report against him in retaliation for asserting his intent to file a grievance, in violation of the First Amendment.  [*Id.*, PgID 7-9].  Good next asserts in Claim III that Cerny, Resident Unit Manager ("RUM") Bradley Peet, and Hearing Investigator Lori Scott violated his due process rights during the hearing concerning the misconduct report, in furtherance of a common goal

---

[2] Good alleged in his response to defendants' motion that he was given the "maximum number of top lock days, (5)."  [ECF No. 76, PageID 648].  But the Misconduct Hearing Report that Good attached to his complaint clearly shows that he received only two days of lost privileges.  [ECF No. 1, PageID 80].  Having said that, the Court's recommendation would not differ even if Good's representation that he received five days of toplock was correct.

to retaliate against him.  [*Id.,* PgID 9-13].  In Claim IV, Good alleges that Scott and Grievance Coordinator Kathleen Parsons "aided and abetted" Cerny's retaliation when Good attempted to appeal the finding of guilt, and in Claim V he contends that Deputy Warden Mark McCullick failed to correct the deficiencies of due process on appeal.  [*Id.*, PgID 7-15].

Defendants argue that Good has no due process interest in relation to Class II misconduct tickets; that his sanction did not constitute adverse action for Good's claim of retaliation; that Good fails to adequately allege causation against some defendants for his retaliation claim, and that Peet is entitled to immunity as a hearings officer.  [ECF No. 72]. They also contend that they are entitled to qualified immunity for their actions, with the exception of defendant Heyns in his official capacity.  [*Id.*].

## III.  ANALYSIS

### A.

Federal Rule of Civil Procedure 56 provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986); *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  The party

seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).

If the movant satisfies its burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial.  *Celotex*, 477 U.S. at 324; *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001).  In deciding a summary judgment motion, the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88(1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Liberty Lobby*, 477 U.S. at 249.

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law."  *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (citations and internal quotation marks omitted).

4

Determining the applicability of qualified immunity requires a two-step inquiry into whether the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005). "A clearly established constitutional violation requires on-point, controlling authority or a robust consensus of cases of persuasive authority." *Ortega v. U.S. Immigration and Customs Enforcement,* 737 F.3d 435, 439 (6th Cir. 2013). In the Sixth Circuit, a constitutional violation is established by binding precedent from the Supreme Court or this circuit, and a court should look beyond those precedents only in extraordinary cases. *Walton v. City of Southfield,* 995 F.2d 1331, 1336 (6th Cir. 1993) *superseded by statute on other grounds as stated in Livermore ex rel. Rohm v. Lubelan*, 476 F.3d 397, 407–08 (6th Cir. 2007).

"The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key v. Grayson,* 179 F.3d 996, 1000 (6th Cir. 1999) (quoting *Cope v. Heltsley,* 128 F.3d 452, 459 (6th Cir. 1997)). This analysis is not rigid and inflexible, and a court may begin and end its inquiry with an analysis of the "clearly established" prong if this would lead to a conservation of judicial resources. *Pearson v. Callahan,* 555 U.S. 223

5

(2009).

## B.

With respect to Claim I, in which Good claims that former-Director
Heyns facilitated a Class II disciplinary process that was biased and sham,
and Claims III-V, in which Good complains about the conduct of Peet,
McCullick, Scott, Parsons and Levy during the hearing and appeals
processes, defendants argue that prisoners have no due process rights
with regard to Class II tickets.

A prisoner does not have a protected liberty interest protected by the
Due Process clause unless the punishment at issue imposes an "atypical
and significant hardship on the inmate in relation to the ordinary incidents
of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  Applying that
ruling, the *Sandin* Court held that the Due Process clause was not
implicated by a prisoner's discipline of segregated confinement.  *Id.* at 486.
The Sixth Circuit followed *Sandin* to hold that a two-day sentence of
"toplock," without any loss of good time credits, did not implicate the Due
Process clause.  *Green v. Waldren*, 221 F.3d 1334 (6th Cir. 2000).  In
*Staffney v. Allen*, 187 F.3d 638 (6th Cir. 1999), the "punishment was
destruction of the property, five days in toplock, fourteen days loss of
privileges, and 120 days extra duty," but "a liberty interest was not

6

implicated as Staffney suffered no loss of good time credits as a result of his minor misconduct conviction."  And in *Catanzaro v. Michigan Dep't of Corr.*, No. 1:09-CV-2, 2009 WL 735073, *14 (W.D. Mich. Mar. 12, 2009), the court found that possible sanctions for minor misconduct convictions, which were "up to five days of 'toplock' (confinement to quarters), 15 days' loss of privileges, assignment to up to 20 hours of extra duty, counseling, reprimand and restitution," did not amount to an atypical or significant hardship when the plaintiff failed to allege that he lost any goodtime credits. *Id*.

Defendants contend that the reasoning of *Catanzaro* applies here, but they acknowledge that so-called "majors" and "minors" no longer exist; misconduct tickets are now classified into Class I, II, or III.  [ECF No. 72, PageID 591, citing PD 03.03.105, ¶ B at PageID 605].  They claim that minor tickets were "renamed" Class II and III tickets, but Good disputes this characterization, pointing to several alleged distinctions between the consequences of a Class II misconduct ticket and a minor misconduct ticket under the old system.  [*Id*.; ECF No. 76, PageID 655-56].

At the time of the alleged events in this case, Class II misconduct violations included punishment of up to five days of toplock, but allowed for up to 30 days' loss of privileges and 40 hours of extra duty, as well as

restitution and/or disgorgement of funds/ill-gotten gains. [*See* PD 03.03.105D, at ECF No. 72, PageID 625]. Good notes that Class II convictions within a certain timeframe prevent an inmate from election as a block representative, and that they can trigger security classification rescreenings under certain circumstances, which can affect parole eligibility (*see* PD 06.05.100A).[3] [ECF No. 76, PageID 696, 698]. He argues that, unlike Class III convictions, Class II conviction records are stored in the prisoner's Record Office file in addition to his Counselor file. [*Id.*, PageID 656, 685-86].

But the parties' dispute regarding whether potential sanctions for Class II tickets could implicate the Due Process clause is misplaced because *Sandin, Green* and *Staffney* did not evaluate the *potential* penalties that the plaintiffs could have received; they evaluated whether the actual punishment at issue imposed an atypical and significant hardship so as to implicate a protected liberty interest. Good received only two days of lost privileges and does not argue that he lost any goodtime credits. In light of the holdings of *Sandin*, *Green* and *Staffney* that plaintiffs with more severe sanctions did not suffer atypical and significant hardship, Good's

---

[3] Available at http://www.michigan.gov/documents/corrections/06_05_100_330065_7.pdf, last accessed May 2, 2017.

due process claim is unsustainable.

In addition, since Good has not shown that any of the defendants violated a due process right that was clearly established, they are entitled to qualified immunity to the extent that they are sued in their personal capacities.

## C.

Good argues that his misconduct ticket and conviction were unconstitutional retaliation for his protected conduct of threatening to file a grievance and then filing that grievance.  Retaliation against a prisoner in response to his or her exercise of a constitutional right violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*).  To state a First Amendment retaliation claim, a prisoner must establish that "1) he engaged in protected conduct, 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct, and 3) the adverse action was taken at least in part because of the exercise of the protected conduct."  *Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005).  Defendants move for summary judgment on the basis of the second and third prongs.

With regard to the second prong, Defendants argue that the courts are "somewhat split" on whether a Class II misconduct ticket and conviction

9

can constitute the adverse actions required to sustain a claim of retaliation. [ECF No. 72, PageID 600]. They argue there is thus no clearly established violation, and all defendants are entitled to qualified immunity regarding the retaliation claim. They cite *Naturalite v. Forner*, No. 10-13564, 2012 WL 1020031, at *7 (E.D. Mich. Mar. 2, 2012), *report and recommendation adopted,* No. 10-CV-13564, 2012 WL 1019053 (E.D. Mich. Mar. 26, 2012), in which the court found that "a five-day loss of privileges based on a minor misconduct [ ] does not constitute an adverse action under *Thaddeus–X*." *Id*. In so holding, *Naturalite* cited *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (loss of fourteen days of privileges has been found not to constitute adverse action); *Patterson v. Godward*, No. 2:08-CV-78, 2012 WL 652470, at *4 (W.D. Mich. Feb. 28, 2012), *aff'd,* 505 F. App'x 424 (6th Cir. 2012) (minor misconduct ticket resulting in 15 days of loss of privileges not an adverse action).

Good counters that other cases have found the consequences of minor misconduct tickets to be possible adverse actions that should be left to a jury to decide. But defendants plainly admit as much, and this disagreement between courts renders the law not clearly established. Defendants are therefore entitled to qualified immunity on these claims. And given the holdings of *Naturalite*, *Ingram* and *Patterson*, the Court finds

10

that two days of lost privileges is truly inconsequential, and should be found

as a matter of law to not constitute an adverse action. *Bell v. Johnson*, 308

F.3d 594, 603 (6th Cir. 2002)

Pertaining to the third prong, defendants argue that, as to Peet,

McCullick, Scott, Parsons, and Levy, Good has not alleged facts to

demonstrate that their alleged adverse actions were motivated by Good's

exercise of protected conduct. Because this is a prisoner case, Good must

satisfy a heightened burden of showing retaliatory motive:

> In the context of trying to defeat the other party's motion for
> summary judgment, where a prisoner must satisfy a higher
> burden to avoid having a First Amendment retaliation claim
> dismissed than Hill has to satisfy at the present stage of the
> case at hand, this court noted that some evidence of retaliatory
> motive is required: '[C]onclusory allegations of retaliatory
> motive unsupported by material facts will not be sufficient to
> state a ... claim.'

*Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010) (quoting *Harbin–Bey v.*

*Rutter*, 420 F.3d 571, 580 (6th Cir.2005).

For Cerny, defendants admit the connection is clear; Good alleges

that "Cerny, motivated by Plaintiff Good's asserted intent to write a

grievance, authored a false misconduct report in an attempt to deter

Plaintiff from submitting his grievance." [ECF No. 1, PageID 7]. But with

respect to the other defendants, the complaint merely alleges in conclusory

fashion that they acted in concert with Cerny in furthering his retaliation.

11

[ECF No. 1, PageID 9-15].  The no more than conclusory allegations of causation with respect to Peet, McCullick, Scott, Parsons, and Levy are an additional reason to grant summary judgment in their favor with respect to Good's retaliation claims.

### D.

Defendants claim that, as the hearing officer for the misconduct hearing, RUM Peet is entitled to judicial immunity.  But such immunity is applies only to independent hearing officers who are attorneys and whose duties are governed by M.C.L. § 791.251 through 791.255.  *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988) (hearing officers as defined by Sections 791.251-791.55 are independent attorneys and are entitled to absolute immunity); *Cleavinger v. Saxner,* 474 U.S. 193 (1985) (prison employees who are subordinate to the warden not entitled to absolute immunity for disciplinary decisions).  As a resident unit manager, Peet was not an independent attorney and was subordinate to the warden, so he is not entitled absolute immunity for his actions as a hearing officer in this matter.

### E.

Good has filed a motion to strike defendants' motion for summary judgment and a motion for an order to show cause.  [ECF Nos. 70, 75].  His

12

motion to strike is based upon alleged violations of Federal Rule of Civil

Procedure 11(b)(2) and (3), but neither rule was violated.  Good claims that

defendants have conflated his Class II misconduct ticket with a "minor

misconduct," but defendants plainly noted in their brief that Good was

issued a Class II ticket and that the terminology was changed from "minor"

and "major" to Class I, II, and III in 2012.  [ECF No. 72, PageID 591].

Good further charges that the motion should be stricken for largely

relying on unpublished cases, but the citation of unpublished cases is

permitted.  *United States v. McCain*, No. 06-13830, 2007 WL 2421471, at

*7 (E.D. Mich. Aug. 22, 2007), citing Fed. R. App. P. 32.1.  It is well-

established that unpublished decisions may be of persuasive value.  *See,*

*e.g., United States v. Keith*, 559 F.3d 499, 505 (6th Cir. 2009), *Smith v.*

*Astrue*, 639 F. Supp. 2d 836, 842 (W.D. Mich. 2009) ("Non-binding

decisions can have great utility when binding decisions on the contested

issue are scarce").  Good's cited authority, *Wilson v. Layne*, 526 U.S. 603

(1999), only states that two unpublished district court decisions could not

"clearly establish" a constitutional violation.  *Id.* at 616.  Good has shown no

reason that any Rule 11 sanctions, including striking defendants' motion,

should be applied here.

Good's motion for an order to show cause is based on an alleged

misrepresentation by defendants' attorney that Good did not concur in "the underlying dispositive motion" (which is the motion currently at hand).  The claim is of no consequence; counsel is not required to seek concurrence when the nonmovant is an incarcerated prisoner proceeding *pro se*.  *See* Eastern District of Michigan Local Rule 7.1(a)(2)(C).  His motion to show cause is without merit.

## IV.   CONCLUSION

For the preceding reasons, the Court **RECOMMENDS** that the defendants' motion for summary judgment [ECF No. 72] be **GRANTED**, and that Good's motion for an order to show cause [ECF No. 70] and to strike defendants' motion [ECF No. 75] be **DENIED**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: May 25, 2017

<u>**NOTICE TO THE PARTIES REGARDING OBJECTIONS**</u>

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection

must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains.  Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to

the objections, specifically addressing each issue raised in the objections in

the same order and labeled as "Response to Objection #1," "Response to

Objection #2," etc.  The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page

limitation.  If the Court determines that any objections are without merit, it

may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 25, 2017.

s/Marlena Williams____
MARLENA WILLIAMS
Case Manager
